DAVONCI HENNINGS,

          Plaintiff,

v.                                                       Case No. 22-CV-999

DANIEL BOUSHKA, *et al.*,

          Defendants.

## DECISION AND ORDER

      Plaintiff Davonci Hennings, who is representing himself and confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Hennings was allowed to proceed on a claim under the Eighth Amendment for deliberate indifference to medical needs wherein he alleges that the defendants, Daniel Boushka and Diana Simmons, deprived him of his diabetic snack bag. He was also allowed to proceed on a claim under the First Amendment against Simmons because he alleged she retaliated against him by depriving him of his snack bag after he complained about issues in receiving the snack bag.

      The defendants have filed a motion for summary judgment. (ECF No. 19.) They then filed an amended motion for summary judgment. (ECF No. 26.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 27.)

## PRELIMINARY MATTERS

The defendants argue that Hennings failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to the motion for summary judgment by not responding to the defendants' proposed findings of fact. Thus, the court should deem all of the defendants' facts as undisputed and grant summary judgment in their favor. (ECF No. 38 at 2-3.)

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Hennings's response materials do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on the defendants' summary judgment motion. The court notes that Hennings submitted his own proposed findings of facts supported by exhibits in his response motions, to which the defendants responded. (ECF Nos. 34, 37.) Hennings also responded to the defendants' proposed findings of fact after they filed their reply brief. (ECF No. 39.) While he did not move to file a surreply, "[t]he decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3 626, 631 n. 2 (7th Cir. 2010)). "In some instances, allowing a filing of a surreply 'vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.'" *Univ. Healthsystem Consortium v. United*

*Health Group, Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (quoting *In re Sulfuric Acid Antitrust Litg.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005)).

Because Hennings is representing himself, allowing a surreply, which was promptly filed after the defendants' filed their reply, gives the court the ability to see the full picture when deciding the summary judgment motion. The court notes that Hennings's surreply is substantially similar to his proposed findings of fact. As such, the court will consider the information contained in Hennings's submissions where appropriate in deciding the defendants' motion for summary judgment.

**FACTS**

*Parties*

At all times relevant Hennings was incarcerated at Waupun. (ECF No. 21, ¶ 1.) Boushka was the food service manager at Waupun. Simmons is an Advance Practice Nurse Practitioner (APNP) at Dodge Correctional Institution, but because of staffing issues she worked at Waupun from April 2022 to April 2023. (*Id.*, ¶¶ 2-3.)

*Boushka's Involvement with Hennings's Snack Bags*

On April 16, 2022, Hennings asserts that, because he did not receive his diabetic snack bag, his glucose levels dropped to the point where he was dizzy and "fearing for his life." (ECF No. 34, ¶¶ 2-3.) He states that Boushka was at fault for not sending his snack bag, and that he notified Boushka on several occasions that he was not receiving them. (*Id.*, ¶¶ 3-4, 7.) He does not explain what health care he received on April 16, or whether as a result of not receiving his snack bag he required health care or otherwise sustained an injury.

3

Boushka states that, in his role as food service manager, he does not prepare, supervise, or otherwise perform quality control checks on special diets and snack bags. (ECF No. 21, ¶¶ 17-18.) Supervising and performing checks on special diets is the role of a food service leader, and Boushka would only get involved if there were continuing issues with a prisoner's snack bag. (*Id.*, ¶¶ 18-19.) Boushka does not recall getting involved with Hennings's snack bags in April 2022. (*Id.*, ¶ 20.) He states that, once the snack bags leave the kitchen, he has no involvement or control over whether they are delivered to the prisoners. (*Id.*, ¶ 22.) According to Boushka, the only interaction he had with Hennings regarding the snack bags was in July 2022, when he learned that Hennings did not receive his snack bag because he was no longer approved for one. (*Id.*, ¶ 23.) Boushka did not have the authority to decide which prisoners received snack backs. (*Id.*, ¶ 27.)

Hennings states that on several occasions he wrote to Boushka about missing snack bags by way of Interview/Information request forms, to which Boushka responded that the issues would be fixed. (ECF No. 34, ¶ 7.) Hennings attached several copies of these forms to his proposed findings of fact. (ECF No. 34-1.) Based on the court's review of these documents, it appears that, while Hennings did fill out several Interview/Information request forms, the majority were responded to by prison officials other than the defendants, such as non-defendant Ann York. Hennings does not specify which forms he contends were responded to by Boushka.

Five request forms appear to be signed "B". One is dated June 5, 2022, wherein "B" responded that he (or she) will look into why Hennings is not receiving the snack

4

bag. (ECF No. 24-1 at 9.) Three are illegible—the court cannot discern the date sent or the contents of Hennings's complaint. (*Id.* at 27, 29, and 39.) "B"'s responses, however, are legible. On the first two he states that he will look into why Hennings hasn't received the snack bag, and in one instance notes that a snack bag tag was made for him, so he was unsure why Hennings did not receive the bag. (*Id.* at 27 and 29.) In the third he indicates that Hennings's snack bag was discontinued by the Health Services Unit (HSU) and that is why he did not receive it. (*Id.* at 39.) In the fifth request form, dated August 9, 2022, Hennings complains about the contents of his snack bag being incorrect, not that he didn't receive it. (*Id.*, ¶ 31.) "B" responds that he will "<u>periodically</u> check your [snack bag] for accuracy." (*Id.*) (emphasis in original).

*Simmons's Treatment of Hennings's Diabetes*

Simmons first examined Hennings on July 8, 2022. (ECF No. 21, ¶ 30.) On that day Hennings's blood pressure was elevated and a nurse referred him to Simmons for an emergency evaluation. (*Id.*) Simmons treated him for high blood pressure, noting that his hypertension was "poorly controlled." (*Id.*, ¶ 31.) She adjusted his blood pressure medication. (*Id.*) She also "reviewed Hennings's diabetes with him," discussing his canteen orders and reviewing his A1C blood sugar levels with him. (*Id.*, ¶ 32.) Simmons ordered a new A1C test to be conducted in 2-3 weeks and decided not to make any changes to Hennings's diabetes medications until those results came back. (*Id.*) Simmons noted that Hennings's diabetes was poorly controlled, and she told him that she was discontinuing his snack bag because he did not qualify for it as his body mass index (BMI) was too high. (*Id.*, ¶ 33.) To qualify for a snack bag, a prisoner

5

needed to be on insulin and have a BMI under 28. (*Id.*) Though Hennings was on insulin, his BMI was 46. (*Id.*)

When it came time for blood to be drawn for the new A1C test Hennings refused. (ECF No. 21, ¶ 35.) Simmons examined Hennings again on July 29, 2022, as part of a "chronic care" visit wherein they discussed Hennings's diabetes, hypertension, hyperlipidemia, diabetic neuropathy, and morbid obesity. (*Id.*, ¶ 36.) At this appointment, Hennings was angry at Simmons for discontinuing his snack bag, stating he needed it for when he has low blood sugar. (*Id*, ¶ 37.) In response, Simmons stated that Hennings needed to cooperate with all of the diagnostic tests. (*Id.*)

Hennings saw non-defendant APNP Dombeck twice between August 31, 2022, and September 27, 2022. (ECF No. 21, ¶¶ 38-39.) At the August appointment Dombeck noted that Hennings was not complying with his diabetic medication regimen and "stressed the importance of medication compliance." (*Id.*) At the September appointment Hennings's A1C levels had improved but his blood pressure was still high. (*Id.*)

Hennings saw Simmons again in December 2022, January 2023, and February 2023. (ECF No. 21, ¶¶ 40-45.) At the December appointment Simmons approved a diabetic condiments diet, which allowed prisoners to have sugar substitutes provided with their meals. (*Id.*, ¶ 41.) In January Simmons noted that Hennings's A1C levels continued to decline but his blood pressure was still poorly managed. (*Id.*, ¶¶ 42-44.) She also noted that he was not following several of the prescribed therapies to manage his blood pressure and diabetes. (*Id.*) In February Simmons treated Hennings for

6

shoulder pain. (*Id.*, ¶ 45.) It does not appear that Hennings's diabetes was discussed at this appointment.

Hennings states that Simmons "discontinued diabetic snack bag after I wrote telling her that 'Boushka' wasn't sending my diabetic snack bag." (ECF No. 34, ¶ 6.) Simmons states she was unaware that Hennings had written Boushka or any other staff member about missing snack bags at any time. (ECF No. 21, ¶ 46.) She was also unaware of any inmate complaints Hennings may have written. (*Id.*, ¶ 51.) It is undisputed that the only correspondence on record between Hennings and Simmons was the request form Hennings submitted on July 18, 2022, wherein Hennings inquired why his snack bag was discontinued. (*Id.*, ¶ 50; ECF No. 34-1 at 22.) Hennings explained that he needed the snack bags for when his blood sugar plunges. (*Id.*) Four days later Simmons responded, "snack bag was discontinued because your BMI (Body Mass Index) per CDC Guidelines is morbidly obese. Also your last A1C for diabetes was 10.6 %." Simmons also noted that Hennings's blood sugar was high. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the

7

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Eighth Amendment Deliberate Indifference to Medical Needs*

A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need

8

is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include where a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

The defendants contend that a lack of a snack bag does not amount to an objectively serious medical need. However, the objectively serious medical need is

9

Hennings's diabetes, which, by its nature, is an objectively serious medical need because, untreated, it can lead to kidney disease, stroke, coma, or death. *See Miller v. Lemke*, 711 Fed. App'x 354, 355 (7th Cir. 2018); *Ortiz v. City of Chicago*, 656 F.3d 523, 527 (7th Cir. 2011).

Thus, the question is whether the defendants' failure to give Hennings a diabetic snack bag constituted deliberate indifference to his diabetes. Hennings must show that the defendants knew that failing to give him a snack bag would result in a "substantial risk of harm." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019). The only "risk of harm" that Hennings offers is that on one day—April 16, 2022—he felt dizzy and feared for his life because he did not receive his snack bag. He does not establish that either defendant was aware of this incident. Nor does he establish that he required any sort of treatment for these symptoms or suffered any sort of injury.

Regarding Boushka, taking the facts in the light most favorable to Hennings, and assuming that all five request forms signed "B" were signed by Boushka, the evidence does not establish that Hennings was suffering from any symptoms as a result of not receiving the snack bags. Three of the request forms are illegible, and the two that the court can read show merely that Hennings was either complaining about not getting a snack bag or about the contents of the snack bag. Hennings does not establish that Boushka knew that the fact that Hennings did not always receive his snack bag was causing Hennings to suffer serious diabetic symptoms. At most Hennings demonstrates that Boushka was aware that sometimes Hennings was not

receiving snack bags, which is insufficient to establish deliberate indifference. No reasonable jury could conclude that Boushka, in failing to remedy the snack bag issue, was deliberately indifferent to Hennings's diabetes. There is no evidence that Boushka knew Hennings suffered any serious risk to his health as a result of not receiving a snack bag. Therefore, summary judgment is granted in Boushka's favor on the Eighth Amendment claim.

As for Simmons, taking the facts in the light most favorable to Hennings, the evidence demonstrates that Simmons, in her professional opinion, concluded that the snack bags were detrimental to Hennings's health, making his diabetes worse. To succeed on an Eighth Amendment claim against Simmons, Hennings must show that her treatment of his diabetes—specifically, cancelling his snack bag--"was 'such a substantial departure from accepted professional judgement, practice, or standards, as to demonstrate that' [Simmons] 'actually did not base the decision' on medical judgment." *Waldrop v. Wexford Health Sources, Inc.*, 646 Fed. App'x 486, 490 (7th Cir. 2016) (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). Hennings has not shown that. The undisputed facts demonstrate that Simmons, in her professional judgment, believed that cancelling the snack bags was an appropriate course of action. When Hennings protested the decision, stating that he needed the snack bags for when his blood sugar was low, Simmons explained that his A1C scores indicated that his blood sugar was very high. Additionally, the evidence shows that, after Hennings no longer had the snack bags, his A1C scores decreased.

In other words, Hennings has not presented any evidence showing that Simmons's decision to cancel his snack bags was a significant departure from accepted professional practice. Simmons's decision was based on her professional judgment, and "[b]y definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). Therefore, summary judgment is granted in Simmons's favor on the Eighth Amendment claim.

*First Amendment Retaliation*

Hennings also states that Simmons's cancelled his snack bags in retaliation for his filing complaints about not receiving them. To state a retaliation claim, a plaintiff must allege that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Hennings's claim fails because no reasonable jury could conclude that his complaints were a motivating factor in Simmons's decision to cancel the snack bags. As discussed above, the undisputed facts demonstrate that Simmons's decision to cancel the snack bags were rooted in her professional belief that it would help manage Hennings's diabetes. Additionally, Hennings fails to present evidence that Simmons was aware of the Information/Interview request forms or grievances that he filed regarding the snack bags. As such, he cannot establish that those complaints were a

12

motivating factor for Simmons. Summary judgment is granted in Simmons favor on the First Amendment claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted as to all claims. Because the court has granted summary judgment in the defendants' favor on the merits, it does not need to address their qualified immunity arguments Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' amended motion for summary judgment (ECF No. 26) is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' first motion for summary judgment (ECF No. 19) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 21st day of December, 2023.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge